NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**EDDIE SLAUGHTER,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2018-1129

---

Appeal from the United States Court of Federal Claims in No. 1:15-cv-00403-RHH, Senior Judge Robert H. Hodges, Jr.

---

Decided: May 7, 2018

---

EDDIE SLAUGHTER, Buena Vista, GA, pro se.

DAVID MICHAEL KERR, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., STEVEN J. GILLINGHAM.

---

Before NEWMAN, LOURIE, and STOLL, *Circuit Judges.*

PER CURIAM.

Eddie Slaughter appeals from the decision of the United States Court of Federal Claims (the "Claims Court") dismissing his complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted. *Slaughter v. United States*, 133 Fed. Cl. 712, 715 (2017). Because the Claims Court did not err in its dismissal, we *affirm*.

## BACKGROUND

Eddie Slaughter is an African-American farmer who has raised crops and livestock in Buena Vista, Georgia since the 1980s. Slaughter was a prevailing claimant in a class action lawsuit brought by a class of African-American farmers against the United States Department of Agriculture ("USDA") for discrimination in connection with "farm loans and other credit and benefit programs." *See Pigford v. Glickman*, 185 F.R.D. 82, 85 (D.D.C. 1999). The parties agreed to a consent decree entered by the District Court for the District of Columbia ("D.C. district court"), which established a two-track dispute resolution mechanism. *See id.* at 95–98.

Slaughter filed a claim pursuant to one of those mechanisms, known as Track A, which provided those class members with little or no documentary evidence, but who were determined by an adjudicator to have been a victim of race discrimination, with "a virtually automatic cash payment of $50,000, and forgiveness of debt owed to the USDA." *Id.* at 95; *see also Slaughter*, 133 Fed. Cl. at 713. In exchange, the consent decree required the class members to dismiss their claims with prejudice and waive any right to contest the decisions of the adjudicator, except that the monitor could require reexamination if he determined that "a clear and manifest error has occurred that is likely to result in a fundamental miscarriage of justice." *Pigford*, 185 F.R.D. at 107–08 (internal quotation marks and citation omitted).

In 2001, the adjudicator assigned to Slaughter's claim found discrimination in connection with his ownership loans, but not his operating or emergency loans. *Slaughter*, 133 Fed. Cl. at 713. He was awarded "a $50,000 cash payment, tax credits amounting to 25% of the cash payment, and injunctive relief" pursuant to the consent decree. Suppl. App. 7. He was "not awarded any debt relief." *Id.* However, the USDA mistakenly sent Slaughter 1099-C tax forms, which indicated that Slaughter's government loans had been forgiven. *Slaughter*, 133 Fed. Cl. at 713. The Internal Revenue Service considers loan forgiveness to be taxable income to debtors, which is reported on form 1099-C. *Id.* In 2002, the USDA sent a letter to Slaughter notifying him of the erroneous 1099-C tax forms, and further clarifying that while his ownership loans had been cancelled, his other loans had not been.

Slaughter sought reexamination of the 2001 adjudication, and the monitor directed the adjudicator to reexamine his claim. Upon reexamination, the adjudicator awarded Slaughter debt relief for his ownership loans. He did not receive any debt relief for his operating or emergency loans as the adjudicator made no specific findings of discrimination with respect to those loans. The reexamination decision, which issued in 2005, was final and gave Slaughter "no further rights to petition the Monitor" regarding the decision or to "seek review in any court or before any tribunal." Suppl. App. 9; *see also Pigford*, 185 F.R.D. at 107–08.

In April 2015, Slaughter sued the USDA in the Claims Court for "breach" of the consent decree, and filed an amended complaint in November 2016. He alleged that he was entitled to full debt relief and that failure to provide this relief constituted a "breach" of the consent decree. *See Slaughter*, 133 Fed. Cl. at 712–13.

The government filed a motion to dismiss under the Rules of the Court of Federal Claims ("Rules") 12(b)(1) for

lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief could be granted, and the Claims Court granted the motion. The court concluded that the consent decree failed to invoke proper Tucker Act jurisdiction, and thus there was "no basis for accepting jurisdiction of this case" under Rule 12(b)(1). *Id.* at 715. Moreover, the court concluded that even if it had jurisdiction, it "could not proceed beyond the pleadings because [Slaughter's] complaint does not show a plausible entitlement to relief" under Rule 12(b)(6). *Id.* Accordingly, the Claims Court dismissed the complaint. *Id.*

Slaughter timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review *de novo* dismissals by the Claims Court for lack of jurisdiction. *Frazer v. United States*, 288 F.3d 1347, 1351 (Fed. Cir. 2002). The Tucker Act grants the Claims Court jurisdiction of claims against the United States "upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. "Generally, in the case of a breach of a contract, a cause of action accrues when the breach occurs." *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (internal quotation marks and citations omitted). "Compliance with the statute of limitations is a jurisdictional requirement." *Holmes v. United States*, 657 F.3d 1303, 1317 (Fed. Cir. 2011) (citing *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133–34 (2008)).

Slaughter argues that the consent decree constitutes a contract with the government, and therefore that the Claims Court had jurisdiction over his complaint. He also contends that he was denied the opportunity to have "a

formal hearing on the merits before the USDA's Administrative Law Judge." Appellant's Br. 5.

The government responds that no contract existed between Slaughter and the government upon which his breach of contract claim could be based. First, because Slaughter did not receive full debt relief as a result of the *Pigford* adjudication, the government asserts that Slaughter's only basis on which he was entitled to full debt relief was based on the incorrect 1099-C tax forms from 2001. The government argues, however, that the 1099-C tax forms are not contracts. Even if they were, the government contends that any breach of contract claim based on the 1099-C tax forms would have been time-barred, because the six-year statute of limitations started running in 2002 when the USDA notified Slaughter of its error.

Second, the government argues that the consent decree did not promise the payment of money or any debt relief to Slaughter. Rather, it established a two-track procedural mechanism for resolving the class members' claims. Pursuant to Track A, the government promised debt relief only if the adjudicator decided that the loans were tainted with discrimination. The government additionally observes, however, that Slaughter has not challenged the 2005 decision itself, nor could he, because it was final and unreviewable. Finally, the consent decree, as the government contends, did not provide for a formal hearing before an Administrative Law Judge.

We agree with the government that the Claims Court properly dismissed Slaughter's complaint under Rules 12(b)(1) and 12(b)(6). First, to the extent that Slaughter's claim for entitlement to full debt relief was based on the 1099-C tax forms, his claim was time-barred. The USDA notified Slaughter of the erroneous 1099-C tax forms in 2002. Assuming *arguendo* that the 1099-C tax forms could create a contract between Slaughter and the gov-

ernment, Slaughter would have had to have filed the complaint in this case within six years from the date the USDA notified him of the error. *See* 28 U.S.C. § 2501. The original complaint was not filed in the Claims Court until 2015. The court therefore properly dismissed the complaint for lack of subject matter jurisdiction.

Second, Slaughter's claim that he was entitled to full debt relief was not a remedy provided for by the consent decree. *See Slaughter*, 133 Fed. Cl. at 715. The consent decree only established the procedures by which the *Pigford* class members could petition for debt relief. *See id.* In fact, Slaughter followed these very procedures, which resulted in a 2005 decision that granted him partial debt relief. *See* Suppl. App. 6–9. If Slaughter had wanted to challenge the 2005 decision, he could not, because the 2005 decision was unreviewable. *See id.* at 9. He also did not raise it in his complaint. The Claims Court therefore correctly dismissed the complaint for failure to state a claim upon which relief could be granted.

We have considered Slaughter's remaining arguments, but find them unpersuasive.

## CONCLUSION

For the foregoing reasons, we *affirm* the Claims Court's dismissal of this case.

## AFFIRMED

### COSTS

No costs.